**In re Bruce A. WILSON and Janet K. Wilson, Debtors.**

**No. 03–00146F.**

United States Bankruptcy Court, N.D. Iowa.

July 29, 2003.

J.L. Greenley, Webster City, IA, David J. Siegrist, Britt, IA, for creditors.

Charles A. Walker, Fort Dodge, IA, for debtors.

## ORDER RE: TRUSTEE'S OBJECTION TO EXEMPTIONS

WILLIAM L. EDMONDS, Bankruptcy Judge.

Debtors Bruce and Janet Wilson filed a Chapter 7 bankruptcy petition on January 17, 2003. Among the items of property they claimed exempt were a Mack grain truck, farming implements and equipment, and an interest in federal farm program payments. On April 4, 2003, trustee David A. Sergeant objected to the claims of exemption in these items. Hearing on the matter was held July 10, 2003 in Fort Dodge. The trustee appeared on his own behalf. Attorney Charles A. Walker appeared for the Wilsons. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

Prior to the hearing, Wilsons had conceded they were not entitled to claim exemptions in the Mack truck or the farming equipment. They had ceased farming in December 2002. The only issue remaining for decision is whether their interest in the farm program payments is exempt. Wilsons claim the payments exempt under Iowa Code § 627.6(8)(a), which allows an exemption for a debtor's interest in "any public assistance benefit."

On the date of their petition, Wilsons described the property as an account receivable from the Farm Service Agency for government payments under "Farm Pro-grams." The value of the property was scheduled as "0.00" because the amount would not be determined until June 1, 2003. The total of the payments is now projected to be $16,570. Exhibit 5.

The payments will be made pursuant to the "Farm Security and Rural Investment Act of 2002," Pub.L. No. 107–171, 116 Stat. 134 (May 13, 2002). The Act is subtitled "An Act to provide for the continuation of agricultural programs through fiscal year 2007, and for other purposes." *Id.* The trustee represented to the court that the act was fully funded when it was signed into law. Title I of the act, relating to commodity programs, is codified at 7 U.S.C. § 7901 et seq. Wilsons' payments are part of the "direct and counter-cyclical program," codified at 7 U.S.C. § § 7911–7918. Regulations relating to this program are found at 7 C.F.R. Part 1412.

As its name suggests, the direct and counter-cyclical program is in two parts, providing for "direct payments" and "counter-cyclical payments." The trustee believes, based on his discussions with county Farm Service Agency representatives, that Wilsons will not receive counter-cyclical payments. Such payments are dependent upon a determination that prices for a commodity have not met "target" prices. 7 U.S.C. § 7914(a). The payments at issue here are direct payments.

The Secretary of Agriculture "shall make direct payments to producers on farms for which payment yields and base acres are established." 7 U.S.C. § 7913(a). Payment yields and base acres are established as provided in 7 U.S.C. § § 7911 and 7912. *See also* 7 C.F.R. § § 1412.201, 1412.301, 1412.302. Wilsons did not dispute the trustee's assertion that their entitlement to direct payments was based solely on Wilsons' crop farming in 2002, and that having crop acres in 2003

was not a prerequisite for receiving the payments.

Direct payments are made at the rate of $0.28 per bushel for corn and $0.44 per bushel for soybeans. 7 U.S.C. § 7913(b). It is not clear whether there is a limitation on the number of acres that may be established for direct payments. *See* 7 C.F.R. 1412.204. The limit of total payments is $40,000 per person per year. 7 C.F.R. § 1412.501 (incorporating 7 C.F.R. § 1400.1). For program years 2003 through 2007, an individual is not eligible for payments if his or her average adjusted gross income exceeds $2.5 million for the three tax years immediately preceding the applicable program year. 7 C.F.R. § 1400.600(a).

For the last several years, Wilsons farmed approximately 2,500 acres on land in Hardin, Hamilton and Wright Counties. For tax years 1996 through 2001, Wilsons have received $405,834 in farm program payments. Exhibit 4. Wilsons have reported the payments as taxable income. *See* Exhibits 1–3.

### Discussion

Wilsons ask the court to find their interest in the farm program payments exempt under Iowa Code § 627.6(8)(a) as property constituting "any public assistance benefit." They argue, essentially, that the phrase encompasses any government payment that is not consideration for goods or services. The trustee urges the court to apply the definition of "public assistance benefit" used in recent decisions involving an earned income credit (hereinafter "EIC"). *See In re Gibbs,* No. 99–02769S (Bankr.N.D.Iowa May 10, 2000); *Matter of Longstreet,* 246 B.R. 611 (Bankr.S.D.Iowa Feb.28, 2000).

■ The trustee bears the burden of proof that the exemptions have not been properly claimed. Fed.R.Bankr.P. 4003(c).

It is a well-known maxim of statutory construction that exemption laws are to be read liberally in favor of the debtor. Nevertheless, the court may not "depart substantially from the express language of the exemption statute or . . . extend the legislative grant." *Longstreet,* 246 B.R. at 614.

In *Longstreet,* Judge Jackwig held that a debtor's interest in an EIC is exempt as a matter of statutory construction. An EIC is a "public assistance benefit," using the common meaning of the phrase and considering its context in the exemption statute. *Id.* at 614–15. An ordinary dictionary definition of "public assistance" is "government aid to needy, blind, aged, or disabled persons and to dependent children." *Id.* at 615. The phrase appears in the same subsection that exempts social security benefits and unemployment compensation. The EIC program was enacted to provide relief for working poor families. A payment under the program is a "public assistance benefit" within the meaning of Iowa Code § 627.6(8)(a). *Id.* at 614–15.

The court in *Longstreet* also discussed prior construction of the statute. Section 627.6(8)(a) formerly exempted "local" public assistance benefits. In 1999, the Iowa legislature replaced the restrictive modifier with the more general word "any." The court concluded the amendment was likely a response to court decisions denying an exemption for an EIC, a federal benefit. *Longstreet,* 246 B.R. at 615 (discussing *Matter of Peckham,* No. 97–01117–WH (Bankr.S.D.Iowa 1998) and *In re Crouch,* No. 96–23085–D (Bankr.N.D.Iowa 1997)).

■ Thus, although the legislature has broadened the scope of the statute, property must still qualify as a "public assistance benefit" before it is exempt under § 627.6(8)(a). Wilsons' argument does not give significance to the word "assistance." This court, in *In re Gibbs,* followed the *Longstreet* decision and applied the phrase

"public assistance" using its common dictionary meaning. The placement of public assistance benefits in the same clause as the exemptions for social security and unemployment benefits supports this reading. The exemption in § 627.6(8)(a) is for government benefits based upon such factors as need, disability, and status as a dependent.

■ Wilsons' farm program payments are of an entirely different character. The act under which the payments will be made is not tailored to provide assistance to needy individuals. Wilsons' 2002 grain operation was apparently the sole basis for qualification for the payments. The amount of the payments is not related to need. The only "means test" for entitlement to payments is an adjusted gross income of less than $2.5 million. The court concludes that the Iowa legislature did not intend the exemption statute to protect Wilsons' farm program payments as "public assistance benefits."

IT IS ORDERED that the trustee's objection to exemptions is sustained.